# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                              CRIMINAL ACTION

VERSUS                                                                15-112-SDD-RLB

KELLIE M. DOMINIQUE

## RULING

This matter is before the Court on the Defendant's *Motion to Vacate Under 28 U.S.C. 2255*.[1] The Government has filed an *Opposition* to this motion.[2] For the reasons which follow, the motion shall be denied.

**I.     BACKGROUND FACTS**

On July 15, 2015, Defendant was charged in a seven-count *Indictment* with: Count One, sex trafficking of a minor; Count Two attempted sex trafficking of a minor; Count Three, Obstruction of Justice; Counts Four through Seven, use of an interstate facility in aid of racketeering.[3] After substituting retained counsel for court-appointed counsel,[4] the Defendant entered into a plea agreement with the Government.[5] Pursuant to the plea agreement, Defendant pled guilty to a Superseding Bill of Information[6] charging her with

---

[1] Rec. Doc. No. 77.
[2] Rec. Doc. No. 84.
[3] Rec. Doc. No. 1.
[4] Rec. Doc. No. 24.
[5] Rec. Doc. No. 44.
[6] Rec. Doc. No. 39.
50314

one count of conspiracy to commit sex trafficking of a minor. Plaintiff entered a plea of guilty to this charge on January 5, 2016.[7]

The Defendant's *Pre-Sentence Investigation Report* ("PSR") was filed by the United States Probation Office ("Probation") on April 11, 2016.[8] In May of 2016, Defendant's counsel filed four objections to the PSR,[9] which were addressed by Probation in an Addendum to the PSR.[10]

The Defendant appeared for Sentencing on June 30, 2016, where the Court heard argument and ruled on Defendant's objections. The Court calculated the Defendant's Offense Level at 43 with a Criminal History Category of I, which resulted in a guideline range of imprisonment of zero to life.[11] The Court allowed the Defendant, her counsel, and the Government to address the Court, and the Court sentenced Defendant to 192 months of imprisonment, a five-year term of supervised release, a $100 special assessment, and restitution in the amount of $14,535.[12] On July 14, 2016, the Defendant appealed this sentence to the Fifth Circuit,[13] and the Fifth Circuit issued a *Mandate* dismissing Defendant's appeal on December 6, 2016.[14]

Subsequently, Defendant filed the subject motion to vacate her sentence pursuant to 28 U.S.C. § 2255 on the ground of "ineffective assistance of counsel – waiver of appeal

---

[7] Rec. Doc. Nos. 43 & 44.
[8] Rec. Doc. No. 48.
[9] Rec. Doc. No. 84-1.
[10] Rec. Doc. No. 53
[11] Rec. Doc. No. 48.
[12] Rec. Doc. No. 56 & 59.
[13] Rec. Doc. 61.
[14] Rec. Doc. 76.
50314

rights,"[15] and the Government opposes the motion. The Court turns to the applicable law and analysis of Defendant's claims.

## II. LAW AND ANALYSIS

Under 28 U.S.C. § 2255, a federal inmate can file a motion to vacate, set aside, or correct her sentence if "that sentence was imposed in violation of the Constitution or the laws of the United states, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The Fifth Circuit has explained that, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised in a direct appeal and would, if condoned, result in a complete miscarriage of justice."[16]

When a defendant has exhausted the right to appeal, her conviction and sentence are presumed to be fair and final.[17] Accordingly, an issue raised for the first time in a motion pursuant to 28 U.S.C. § 2255 will be considered only if the Defendant shows "cause" for her failure to previously raise the issue and "actual prejudice" resulting from the alleged error.[18] Vague or conclusory allegations are insufficient to raise a claim under 28 U.S.C. § 2255.[19]

### A. Ineffective Assistance of Counsel - Standard

Ordinarily, a claim of ineffective assistance of counsel may be raised in a motion

---

[15] Rec. Doc. 77 at 5.
[16] *United States v. Acklen*, 47 F.3d 739, 741 (5th Cir. 1995).
[17] *United States v. Frady*, 456 U.S. 152,164 (1982); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991)(en banc).
[18] *Frady*, 456 U.S. at 167-68; *Shaid*, 937 F.2d at 232.
[19] *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).
50314

under 28 U.S.C. § 2255 because such a claim "cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations."[20] A successful claim of ineffective assistance requires a party show that: (1) "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the range of professionally competent assistance,"[21] and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[22]

To prove the first element of the *Strickland* test, "…the defendant must show that counsel's representation fell below an objective standard of reasonableness," against "[j]udicial scrutiny of counsel's performance," that is, "highly deferential."[23] In *Strickland*, the Court noted that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," and that a "strong presumption" exists that an attorney's performance is "within the wide range of reasonable professional assistance."[24] Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[25]

---

[20] *United States v. Higdon*, 832 F.2d 312, 313-14 (5th Cir. 1987).
[21] *Strickland v. Washington*, 466 U.S. 668, 690 (1984).
[22] *Id.* at 694.
[23] *Id.* at 688-89.
[24] *Id.* at 689.
[25] *Id.*

50314

The Court should not simply give an attorney the benefit of the doubt; rather, the Court should consider the breadth of possible reasons for counsel's actions.[26] Indeed, the Court must consider whether the attorney's challenged actions might have been sensible strategy when undertaken.[27] Further, a few isolated shortcomings should not render the assistance ineffective; rather, the entire course of an attorney's representation should be considered.[28]

The second prong of the *Strickland* test requires that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[29] A defendant must also show that "the result of the proceeding was fundamentally unfair or unreliable."[30]

### B. Defendant's Satisfaction with Counsel

Here, Defendant claims that her counsel provided ineffective assistance because they "failed to attempt to negotiate a Plea Agreement which permitted appeal in the event defense objections to Guidelines calculations were overruled or rejected by the sentencing Court."[31] Defendant also claims that she did not knowingly and voluntarily waive her right to appeal her sentence because "her attorn[eys] never made clear to her that her plea agreement included a waiver of appeal regarding any and all sentencing objections."[32] However, Defendant's claims of ineffective assistance are undermined by

---

[26] *Id.* at 421.
[27] *See United States v. Bethley*, 2013 WL 5517940, at *5 (M.D. La. Oct. 2, 2013); *Escamilla v. Stephens*, 749 F.3d 380, 388 (5th Cir. 2014)(internal citations omitted).
[28] *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).
[29] *Strickland*, 466 U.S. at 694.
[30] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).
[31] Rec. Doc. No. 77 at 5.
[32] *Id.*

50314

the record in this case, particularly by Defendant's own, sworn representations to this Court.

During her plea colloquy, Defendant affirmed under oath that she believed her counsel were well-versed in the law and had given her good, sound legal advice.[33] Defendant also affirmed that she had no communication problems with her counsel; she had no complaints about her lawyers; she felt like they had done a good job for her; she felt like they had her best interests at heart; and, she trusted what they had told her.[34] Defendant's satisfaction with her counsel was also expressed in her signed plea agreement. On page fourteen of the written agreement, in the section describing representations by the Defendant, just above Defendant's signature, Defendant confirmed that she was, "satisfied with the legal services provided by her counsel and had no objection to their legal representation."[35]

Defendant was asked by the Court if she reviewed the plea agreement in thorough detail with her counsel before agreeing to it, and Defendant responded, "Somewhat."[36] Troubled by this response, the Court asked follow-up questions to ensure Defendant had been adequately assisted in considering the plea agreement.[37] The Court accepted the Defendant's guilty plea, and one of Defendant's attorneys, Andrew Belanger, raised this issue again to the Court to clarify counsel's efforts in negotiating and explaining the final plea agreement Defendant accepted.[38] Defense counsel clarified that Defendant

---

[33] Rec. Doc. No. 82 at 5.
[34] *Id.* at 6.
[35] Rec. Doc. No. 44 at 15.
[36] Rec. Doc. No. 82 at 20.
[37] *Id.* at 20-21.
[38] *Id.* at 27-28.
50314

participated in the negotiations of the plea agreement "in two-fold: one is with regards to the factual basis. The factual basis in the record today has been modified pursuant to [Defendant's] input, and also to the actual charge that she is pleading guilty to is something that we have negotiated."[39] Counsel further explained that:

> The original Indictment came with a different plea agreement and a different plea offer. And so the United States Attorney through consulting with her and through us, has agreed to change the charge to something we think more accurately reflects her conduct. So I do think that she has participated actively in negotiation to come up with the plea agreement as filed with the court.[40]

The Court asked Defendant to affirm that Belanger's account of the plea negotiations was correct, and Defendant agreed that her plea agreement was "a result of active communication and active participation by [herself] in negotiation the terms,"[41] that she was "engaged at all points in the process,"[42] and she understood what all parties were agreeing to by the terms of the plea agreement.

Defendant's sworn testimony demonstrates that she was happy with her counsel, happy with the terms of the plea agreement, and she took a large role in negotiating those terms. Moreover, the effectiveness of Defendant's counsel is bolstered by this testimony as the record demonstrates that the United States agreed to charge Defendant with a less serious offense specifically as the result of negotiations with Defendant through her counsel. Accordingly, Defendant fails to satisfy the first prong of the *Strickland* test, and the Court need not go further.

---

[39] *Id.* at 28, lines 11-15.
[40] *Id.* at 28, lines 16-22.
[41] *Id.* at 29, lines 6-7.
[42] *Id.*, lines 10-11.

50314

### C. Defendant's Waiver was Knowing and Voluntary

Curiously, Defendant relies on *United States v. Portillo*,[43] wherein the defendant entered into a written plea agreement with the Government that included the forfeiture of appellate rights.[44] However, *Portillo* does not support Defendant's arguments. The *Portillo* court recognized that a legitimate waiver of the right to appeal requires that "the defendant must know that he had a 'right to appeal his sentence and that he was giving up that right.'"[45] Nevertheless, the *Portillo* court found the defendant's waiver to be valid despite less obvious factual circumstances than those in the present case.

The *Portillo* court determined that the record reflected no misunderstanding by the defendant concerning the waiver of his right to appeal even though the lower court did not specifically address the waiver provision of the plea agreement.[46] The court held that:

> When the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal.[47]

In the present case, the record demonstrates that the Defendant had more than a satisfactory understanding of the waiver agreed to both in the written plea agreement and the Court's colloquy with the Defendant regarding these rights. At her re-arraignment, the Court noted that the Defendant was "obviously … well educated" and had no impairments to her ability to comprehend the proceedings.[48] The Court verified that the

---

[43] *United States v. Portillo*, 18 F.3d 290 (5th Cir. 1994).
[44] *Id.* at 292.
[45] *Id.* (citing *United States v. Melancon*, 972 F.2d 566, 568 (5th Cir. 1992)).
[46] *Id.*
[47] *Id.*
[48] Rec. Doc. No. 82 at 5.

50314

Defendant knowingly and voluntarily entered her plea, understood the consequences of her plea, and understood the rights that she was forfeiting by entering the plea.[49] The Court reviewed the plea agreement with the Defendant while the Defendant had a copy of the agreement in front of her and was aided by her counsel.[50] Defendant was advised by the Court during this hearing that she could "take a break and talk to [her counsel]" about any questions she may have during the proceeding.[51] Throughout the hearing, Defendant confirmed that she did not have any such questions for her counsel.[52]

While reviewing the plea agreement, the Court explained the following to the Defendant:

> You are waiving some important rights of appeal as a result of this plea agreement. You reserve the right to appeal only three situations. and those three situations are, if the Court would impose a penalty in excess of the statutory maximum. That's the maximum that I have just explained to you a few minutes ago. If the Court would impose a sentence above that maximum, you could appeal that. Likewise, if the Court imposes a penalty, or conviction greater than the sentencing guidelines, either by variance or departure, which are two mechanisms to go above the sentencing guidelines, you could also appeal that; do you understand?
>
> ***
>
> Those are the only appeal rights that you have; do you understand?[53]

The Defendant responded affirmatively that she understood the appeal rights that she was waiving and those that she was reserving.[54]

---

[49] *Id.* at 2-3.
[50] *Id.* at 15.
[51] *Id.* at 10-11.
[52] *Id.* at 21.
[53] *Id.* at 22, line 25 through 23, lines 1-10; 12-13.
[54] *Id.* at 23.

The written plea agreement also clearly set forth the appeal rights Defendant was waiving and reserving. Page eleven of the plea agreement contains a section captioned "WAIVERS BY THE DEFENDANT," which includes a provision titled "Waiver of Appeal and Collateral Remedies."[55] The waiver-of-appeal provision explains that, by entering into the plea agreement, the Defendant "…expressly waives the right to appeal her conviction and sentence…"[56] Further, on page fourteen of the plea agreement, there is a section entitled "REPRESENTATION AND SIGNATURES" that contains the subsection, "By the Defendant."[57] In this section, Defendant affirmed that she "fully [understood] the agreement and enter[ed] into it knowingly, voluntarily, and without reservation."[58]

Accordingly, the Court finds Defendant's contention that it was "never made clear to her that her plea agreement included a waiver of appeal regarding any and all sentencing objections"[59] to be utterly without merit. Indeed, the record demonstrates that the Defendant knowingly and voluntarily, with the competent assistance of counsel, waived the appellate rights of which she now complains. Defendant's motion must be denied.

---

[55] Rec. Doc. No. 44 at 11.
[56] *Id.*
[57] *Id.* at 14.
[58] *Id.*
[59] Rec. Doc. No. 77 at 5.
50314

## III. CONCLUSION

For the reasons set forth above, the Defendant's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence*[60] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on March 13, 2019.

*Shelly D. Dick*
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[60] Rec. Doc. No. 77.
50314